■ LOUIS J. ALPHIN, Appellant, v. FRANK DUDISH, Respondent.— Appeal from a judgment of the Supreme Court, Madison County, in favor of the defendant-respondent, entered upon a verdict of no cause of action and from an order denying plaintiff-appellant's motion to set aside the verdict. In the early afternoon on November 13, 1955 the plaintiff was driving south on Route 365 and the defendant was driving north on the same highway. The defendant made a left turn in front of the plaintiff's car and a collision occurred. The defendant was turning into a gas station. The plaintiff testified that he first saw the defendant's car when it was about a thousand feet away. He slowed down to about 30 miles per hour when he crossed an intersection about 500 feet from the scene of the accident and then accelerated to about 40 miles per hour. When the defendant's car was about 100 feet away it suddenly began to turn in front of the plaintiff who immediately applied his brakes, leaving tire marks on the highway for 59 feet. The plaintiff further testified that the defendant did not signal. The defendant testified that he signaled before he began to turn and while turning he saw the plaintiff's car about 200 to 250 feet away. He then heard the plaintiff's brakes and stepped on the gas to try and get out of the way. He testified that he thought he could make it and that he expected the plaintiff to get out of the way. The defendant further admitted that he had a visibility of at least 500 feet. The appellant contends that the jury's verdict was against the weight of evidence and that the conduct of defendant's attorney was prejudicial and deprived the plaintiff of a fair trial. The respondent argues that the verdict was consistent with the facts and that there was no prejudicial error. The general rule regarding the making of a turn across traffic was stated in *Anderson* v. *Burkardt* (275 N. Y. 281, 282): " one turning across traffic must use care commensurate with the situation and look out for approaching cars, but he is not obliged to wait until every one in sight has passed. Others

must also show consideration and use like care not to hit the turning car. The relative rights depend upon distance and speed." Further subdivision 2 of section 83 of the Vehicle and Traffic Law which was in effect at the time of the accident provided: " 2. The driver of a vehicle shall, before turning while in motion   *   *   * first see that there is sufficient space to make such movement in safety ". (L. 1940, ch. 655.) Defendant admittedly had a visibility of over 500 feet, but according to his own testimony he did not see the plaintiff's car until he began to make his turn and plaintiff's vehicle was then 200 to 250 feet away. It is evident that he was not maintaining a proper lookout especially in view of the fact that he was preparing to make an unusual maneuver, a left turn across traffic and not at an intersection. In *Kreeger.* v. *Karen* (3 A D 2d 859) the court held that a finding that the plaintiff was not contributorily negligent, when he turned left when the defendant's car was 200 feet away, was contrary to the weight of the evidence. (See, also, *Hotine* v. *Monett,* 137 N. Y. S. 2d 727, affd. 3 A D 2d 836.) Further, even when he saw the plaintiff's car he stepped on the gas rather than return to his own lane. He testified he expected the plaintiff to slow down or change his course. It would appear therefore, in view of the defendant's own testimony that he was negligent. The next question is whether the jury could properly find that the plaintiff contributed to the accident by his own negligence on this record. Assuming that a signal was given by the defendant, a fair inference from his own testimony indicates that this signal was given when the vehicles were quite close together. He claims that he turned on his turn signal when he started to make his turn, at one point testifying that he was turning when he signaled.  The following question and answer appears in his cross-examination: " Q. And how far away was the Alphin car when you first saw it?  A. Well, it was about 250 feet away when I started to make my turn." With the plaintiff's car proceeding at least 40 miles per hour it was covering 60 feet of highway per second. With the defendant proceeding in the opposite direction at least 20 miles per hour, and speeding up, the gap between the cars was closing at least 100 feet per second. This would allow only about 2 seconds from the time the defendant started his unusual maneuver, this left turn across traffic, until the crash. It seems evident that this plaintiff was confronted with an emergency. The 59-foot skid marks are not abnormal for the application of brakes on a car proceeding 40–50 miles per hour. The defendant's claim that the plaintiff could have turned to the left to miss him is no answer or excuse in this case. Upon the record it is our view that the verdict was against the weight of the evidence and should be reversed and a new trial granted. Since we have so concluded, it is not necessary to discuss the errors assigned. Judgment reversed and a new trial granted, with costs to abide the event. Foster, P. J., Bergan, Coon, Herlihy and Reynolds, JJ., concur.